# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JASMINE DUMONT and JEAN CLARCK G. DUMONT,

      *Plaintiffs,*

    v.

MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,

      *Defendants.*

Case No.
2:25-cv-02736-AWM-JBW

## MEMORANDUM AND ORDER

Plaintiff Jean Clarck G. Dumont, a citizen of Haiti married to a United States citizen, has waited approximately three years for United States Citizenship and Immigration Services (USCIS) to adjudicate his application to become a lawful permanent resident, and well over a year for a decision on his application for employment authorization. He and his wife, Plaintiff Jasmine Dumont, bring this action under the Administrative Procedure Act (APA), asking the Court to compel USCIS to issue decisions on his applications. Defendants[1] move to dismiss under Federal Rule of Civil Procedure 12(b)(1), contending Congress has placed the pace of these adjudications beyond judicial review. For the reasons explained below, the Court concludes that it lacks subject-matter jurisdiction over both claims, and it therefore **GRANTS** Defendants' Motion to Dismiss (Doc. 14) and dismisses this action without prejudice.

---

[1] Secretary Markwayne Mullin is automatically substituted for former Secretary Kristi Noem under Federal Rule of Civil Procedure 25(d). The caption also reflects the current assignment of this case within the District.

## I. BACKGROUND

The following facts are drawn from the Complaint and its exhibits and are accepted as true for purposes of this facial jurisdictional challenge. Jasmine Dumont is a United States citizen; her husband, Jean Dumont, entered the United States through the parole program for certain nationals of Cuba, Haiti, Nicaragua, and Venezuela. Both reside in Johnson County, Kansas. On July 24, 2023, Jasmine Dumont filed a Form I-130 Petition for Alien Relative on her husband's behalf, and Jean Dumont concurrently filed a Form I-485, Application to Register Permanent Residence or Adjust Status. USCIS approved the Form I-130 on February 10, 2024. On November 7, 2024, as his parole-based work authorization neared expiration, Jean Dumont filed a Form I-765, Application for Employment Authorization. Neither the Form I-485 nor the Form I-765 has been adjudicated.

Plaintiffs allege these delays substantially exceed USCIS's published average processing times and the 180-day benchmark described in 8 U.S.C. § 1571(b), and that the resulting uncertainty has caused financial hardship, emotional distress, and practical difficulties, including Jean Dumont's inability to work lawfully or obtain a driver's license.[2] Plaintiffs filed this action in the United States District Court for the District of Columbia on September 19, 2025, and it was transferred to this District. The Complaint asserts two counts under the APA: Count I alleges unreasonable delay in adjudicating the Form I-485, and Count II alleges unreasonable delay in adjudicating

---

[2] Plaintiffs also point to an internal USCIS record, produced in response to a Freedom of Information Act request, containing a "Render Case Decision" entry reflecting "Approved" and a "Resident Since" date. Doc. 1-3 at 1. Defendants respond that the record does not establish what, if anything, was approved, and both parties agree that the Form I-485 remains unadjudicated. The Court does not overlook the discrepancy, but it is immaterial to the questions presented: both counts challenge delay, not any decision, and nothing in this ruling prevents USCIS from correcting its records or from adjudicating the pending applications promptly.

the Form I-765. Plaintiffs seek an order compelling adjudication, as well as attorney's fees under the Equal Access to Justice Act.

Defendants moved to dismiss under Rule 12(b)(1) on January 12, 2026, presenting a facial challenge to the Court's jurisdiction. The motion is fully briefed. Defendants later filed a notice of supplemental authority (Doc. 23) directing the Court to *Kanmi v. USCIS*, No. 25-1228-HLT, 2026 WL 1408473, at *3 (D. Kan. May 20, 2026), which dismissed a similar claim in this District. Plaintiffs did not respond to the notice.

## II.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and the party invoking federal jurisdiction bears the burden of establishing it. *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 945 F.3d 1270, 1273 (10th Cir. 2019). A motion under Rule 12(b)(1) may take the form of a facial or a factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). A facial attack, which Defendants raise here, questions the sufficiency of the complaint's jurisdictional allegations; in reviewing it, the Court accepts those allegations as true. *Id.* Dismissal for lack of subject-matter jurisdiction is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006).

The APA directs agencies to conclude matters presented to them "within a reasonable time," 5 U.S.C. § 555(b), and authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed," *id*. § 706(1). That authority has limits. Judicial review is unavailable to the extent a statute precludes it or agency action "is committed to agency discretion by law." *Id*. § 701(a). And a claim under § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency

3

action that it is *required to take.*" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Each of Plaintiffs' claims fails at this threshold, though for different reasons.[3]

### III.  ANALYSIS

### A.  The Court Lacks Jurisdiction to Review the Pace of I-485 Adjudication.

Count I is barred by 8 U.S.C. § 1252(a)(2)(B)(ii), which states, "[n]otwithstanding any other provision of law," no court shall have jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." The relevant grant of authority appears in the same subchapter: an eligible alien's status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a). The question is whether the pace at which USCIS adjudicates an adjustment application falls within that discretionary grant. The Court concludes it does.

Section 1255(a) does not merely make the ultimate grant or denial of adjustment discretionary. It commits the adjudication itself to the Attorney General "in his discretion and under such regulations as he may prescribe"—language that reaches not only the decision but also the manner and process of deciding. The word "may" in a provision of this kind "*clearly* connotes discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 13–14 (2024) (quoting *Biden v. Texas*, 597 U.S. 785, 802 (2022)). And the sequence and

---

[3] Plaintiffs' jurisdictional statement also invokes the Mandamus Act, 28 U.S.C. § 1361. Section 1252(a)(2)(B)(ii) applies "[n]otwithstanding any other provision of law (statutory or nonstatutory)," a bar that expressly encompasses § 1361 itself. And the mandamus analysis in any event parallels the APA inquiry, requiring a clear, nondiscretionary duty to act. *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005). The Court's disposition of the APA claims therefore forecloses any mandamus theory as well.

timing of adjudication are themselves "decision[s] or action[s]" in the ordinary sense: in working through its queue, USCIS continually decides how to allocate its adjudicative resources and when to act on any given application. Plaintiffs characterize delay as inaction falling outside the statute, but that framing cannot be squared with the text. The agency's discretion "extends not simply to final decisions about I-485s but extends also to the actions taken as part of the decision-making process 'including the pace at which that process is undertaken.'" *Kanmi*, 2026 WL 1408473, at *2 n.4 (quoting *Kanapuram v. Dir., USCIS*, 131 F.4th 1302, 1307 (11th Cir. 2025)).

Every court of appeals to consider the question since *Patel v. Garland*, 596 U.S. 328, 338 (2022)—which gave the parallel language of § 1252(a)(2)(B) its "expansive" ordinary meaning—has reached this conclusion. *See Geda v. Dir., USCIS*, 126 F.4th 835, 843–44 (3d Cir. 2025); *Kale v. Alfonso-Royals*, 139 F.4th 329, 336 (4th Cir. 2025); *Cheejati v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1126 (2025); *Thigulla v. Jaddou*, 94 F.4th 770, 775–78 (8th Cir. 2024); *Kanapuram*, 131 F.4th at 1306–07. This Court has recently confronted the same inaction argument Plaintiffs advance and rejected it on the same textual grounds. *Kanmi*, 2026 WL 1408473, at *2–3 & n.4. The Tenth Circuit has not yet addressed the issue, so the Court writes without controlling authority. But the recent appellate consensus is uniform, and Plaintiffs do not address any of these decisions. Nor is the consensus an artifact of its facts: although several of the appellate decisions arose from visa-retrogression holds, their reasoning rests on § 1255(a)'s commitment of the adjudicative process itself—not on any particular deferral policy—and *Kanmi* applied that reasoning to precisely the kind of backlog delay alleged here. To be sure, the Fourth Circuit distinguished "mere inaction"—which persuasive authority suggests is not a "decision or action" at all—from

5

the affirmative adjudication-hold decision before it. *Kale*, 139 F.4th at 335. But for the reasons already given, that distinction does not aid Plaintiffs: in working through its backlog, USCIS continually exercises the discretion § 1255(a) confers over the sequence and timing of adjudication. The Court finds the reasoning of these decisions persuasive and faithful to the statutory text.[4]

The presumption favoring judicial review of administrative action does not alter this conclusion. That presumption "may be overcome by specific language in a provision or evidence drawn from the statutory scheme as a whole," *Patel*, 596 U.S. at 347 (internal quotation marks omitted), and § 1252(a)(2)(B)(ii) supplies precisely such language: an express withdrawal of jurisdiction, operative "[n]otwithstanding any other provision of law," over discretionary decisions and actions under the subchapter. Where the jurisdiction-stripping text is clear, its plain meaning controls. *See Thigulla*, 94 F.4th at 776; *Kanmi*, 2026 WL 1408473, at *1 n.3.

---

[4] A minority of district courts continue to find jurisdiction over adjustment-delay claims, reasoning that a failure to act is not a "decision or action" within § 1252(a)(2)(B)(ii)'s reach and distinguishing the appellate decisions as products of visa-retrogression or adjudication-hold policies rather than pure backlog. *See, e.g.*, *Jamdar v. Edlow*, No. 5:25-cv-11002-BLF, 2026 WL 1763856, at *2–3 (N.D. Cal. June 18, 2026); *Kastoun v. Noem*, No. 1:25-cv-01636-CDB, 2026 WL 1747032, at *5–6 (E.D. Cal. June 17, 2026); *Gao v. Mullin*, No. 25-cv-01479-SVK, 2026 WL 948665, at *3–5 (N.D. Cal. Apr. 8, 2026); *Park v. Edlow*, No. 26-504, 2026 WL 2065339, at *4 (D.D.C. July 16, 2026) (rejecting § 1252(a)(2)(B)(ii) bar over delayed Form I-526E investor petition, but dismissing under Rule 12(b)(6) for failure to state a delay claim); *see also Roka v. Noem*, No. 4:25-cv-1697-RWS, 2026 WL 1077441, at *3–5, *9 (E.D. Mo. Apr. 21, 2026) (finding the question sufficiently close to order supplemental briefing). *But see Khachutorov v. Britten*, 792 F. Supp. 3d 1106, 1113–14 (C.D. Cal. 2025) (agreeing with the appellate consensus). For the reasons given in the text, the distinction does not persuade. Nor does *Babaria v. Blinken*, 87 F.4th 963, 976–80 (9th Cir. 2023), qualify that consensus. The Ninth Circuit there held a comparable delay claim unlikely to succeed on the merits, affirming the denial of preliminary relief, without considering whether § 1252(a)(2)(B)(ii) strips jurisdiction. *See Kanapuram*, 131 F.4th at 1307 n.2 (noting that *Babaria* "did not consider or reject" the jurisdictional argument). The Tenth Circuit's most recent decision construing § 1252(a)(2)(B)(ii)—in the distinct context of a nondiscretionary refugee-status eligibility determination— was vacated on panel rehearing in light of *Mullin v. Doe*, No. 25-1083, 2026 WL 1825840 (U.S. June 25, 2026), and provides no guidance either way. *See Mukantagara v. Noem*, 164 F.4th 765 (10th Cir. 2026), *vacated and panel reh'g granted sub nom. Mukantagara v. Mullin*, No. 24-4071 (10th Cir. July 14, 2026).

Plaintiffs' authorities do not persuade the Court otherwise. *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187–90 (10th Cir. 1999), turned on a statutory deadline: the Endangered Species Act required the Secretary of the Interior to designate critical habitat within one year of proposing a species for listing, 16 U.S.C. § 1533(b)(6)(A), and he did not. Designation was a discrete act legally required—exactly what *Norton* demands. No comparable deadline governs a Form I-485. The 180-day benchmark of 8 U.S.C. § 1571(b) expresses only "the sense of Congress" and creates no enforceable obligation—as Plaintiffs implicitly acknowledge in describing it as a guideline. *Iddir v. INS*, 301 F.3d 492, 499–501 (7th Cir. 2002), arose from the diversity-visa program's statutory sunset (another deadline-driven context), and the remaining decisions Plaintiffs cite are district court cases that predate both *Patel* and the appellate consensus described above.

The structure of the Immigration and Nationality Act (INA) reinforces the Court's reading. When Congress intended the timing of immigration adjudications to be judicially enforceable, it said so expressly. *See* 8 U.S.C. § 1447(b) (authorizing district court intervention where a naturalization application is not decided within 120 days of the applicant's examination). Its silence as to any timetable for adjudicating applications under § 1255(a) is therefore best read as a deliberate allocation of that timing to the agency—not a gap that the APA's general provisions license courts to fill.

Plaintiffs warn this reading would permit USCIS to insulate itself from all review by simply declining to decide applications, potentially forever. On these facts, the concern is overstated. Plaintiffs allege that a temporary hold on the adjudication of applications filed by beneficiaries of the parole program suspended processing of Jean Dumont's applications for more than five months, but that hold was lifted in June 2025,

7

and Plaintiffs otherwise attribute the delay to processing backlog rather than to any continuing refusal to act. Doc. 1, ¶ 7 n.1. The record likewise reflects agency activity on the applications. *See* Doc. 1-3 at 2. Like other courts adopting this construction, the Court reserves the question whether an outright refusal to process an application would present a different case. *See Safadi v. Howard*, 466 F. Supp. 2d 696, 700–01 (E.D. Va. 2006). Nor, having concluded that it lacks jurisdiction, does the Court express any view on whether the delay here is reasonable.

The Court does not lightly set aside Plaintiffs' frustration with a process that has stretched far beyond the agency's own published averages. But as the Fifth Circuit has observed, "[f]ederal courts are not a fallback forum for disappointed applicants midstream in the administrative process." *Kewayfati v. Bondi*, 165 F.4th 342, 355 (5th Cir. 2026). Count I is dismissed for lack of subject-matter jurisdiction.

## B.  The Court Lacks Jurisdiction to Compel Adjudication of the I-765.

Plaintiffs' argument regarding the adjudication of the I-765 fails for a related but distinct reason. Employment authorization for an applicant in Jean Dumont's position is not a creature of statute: the INA confers on this category of applicant no right to work authorization, nor even a right to apply for it. The pathway exists only by regulation. *See* 8 C.F.R. § 274a.12(c). The governing regulation provides that approvals of applications in this category are "within the discretion of USCIS," *id.* § 274a.13(a)(1), and no statute or regulation requires the agency to adjudicate such an application within any particular time. The contrast with provisions in which Congress made work authorization mandatory is instructive. *See* 8 U.S.C. § 1254a(a)(1)(B) (Attorney General "shall authorize" employment for temporary-protected-status beneficiaries). Because that discretion is conferred by regulation rather than "specified under this subchapter,"

the bar of § 1252(a)(2)(B)(ii) that disposes of Count I does not reach this claim. *See Kucana v. Holder*, 558 U.S. 233, 246–47 (2010). The obstacle lies instead in the APA itself.

Because the adjudication is discretionary and subject to no mandatory timetable, Plaintiffs cannot identify the "discrete agency action that [USCIS] is *required to take*" that a claim under § 706(1) demands. *Norton*, 542 U.S. at 64. The claim is accordingly barred: the action Plaintiffs would compel is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Tenth Circuit has reviewed such dismissals as jurisdictional. *See McAlpine v. United States*, 112 F.3d 1429, 1432–33 (10th Cir. 1997) (reviewing de novo, under Rule 12(b)(1), a dismissal on § 701(a)(2) grounds). The Fourth Circuit reached the same conclusion for work-authorization applications the agency "may"—but need not— grant. *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366–71 (4th Cir. 2021). And although the Sixth Circuit disagreed with *Gonzalez* on whether § 1252(a)(2)(B)(ii) bars review of such claims, it likewise concluded it "cannot compel USCIS to adjudicate" work authorization applications the agency may grant "notwithstanding any unreasonable delay." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 443–44, 452 (6th Cir. 2022). District courts have applied the same principle to the precise circumstances presented here, dismissing for lack of jurisdiction unreasonable-delay challenges to a Form I-765 filed during the pendency of an adjustment application. *See, e.g.*, *Khachutorov*, 792 F. Supp. 3d at 1112–13. Plaintiffs identify no decision compelling adjudication of a Form I-765 delayed by ordinary processing backlog.

Plaintiffs respond that once USCIS establishes an application process and collects fees, documentation, and biometric information, it assumes a nondiscretionary duty to process applications within a reasonable time, with § 555(b) supplying the governing

9

legal standard. The argument has equitable force—the agency does take the fee and hold the file—but no authority converts the existence of a discretionary application process into a judicially enforceable adjudication deadline. And § 555(b)'s general instruction cannot itself supply the specific, mandatory duty *Norton* requires. Were it otherwise, § 701(a)(2) would impose no meaningful limit, and every discretionary benefit with an application form would carry an implied deadline enforceable in federal court. *Kucana* does not point the other way. The Court has already given it effect: because the discretion at issue is regulatory, § 1252(a)(2)(B)(ii) does not bar this claim. But *Kucana*'s further concern does not carry over to § 701(a)(2). That concern was that a contrary reading of the jurisdictional bar would leave the Executive "a free hand to shelter its own decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions 'discretionary.'" *Kucana*, 558 U.S. at 252. It addresses an agency's withdrawal of review Congress had left in place. Nothing was withdrawn here. Section 274a.13(a)(1) does not convert a mandatory adjudication into a discretionary one; it describes a benefit Congress never obliged USCIS to confer, or to decide upon, in the first instance. *Kucana* confirms that Congress alone controls the jurisdiction of the federal courts; it does not supply a duty to act where Congress has imposed none. Count II is dismissed for lack of subject-matter jurisdiction.[5]

---

[5] The Court's holding on Count II is limited to regulatory categories, like the one at issue here, for which no statute or regulation prescribes an adjudication timetable. It does not address categories governed by express timing rules. *Cf.* 8 C.F.R. § 274a.12(c)(8); *id.* § 208.7(a) (prescribing timing rules for the asylum applicant employment authorization category). Nor does it reach a claim challenging a categorical policy of indefinite hold on adjudication. *Cf. Behdin v. Edlow*, No. 26-cv-00566-SVK, 2026 WL 1031079, at *8– 9, *11 (N.D. Cal. Apr. 16, 2026) (preliminarily enjoining an indefinite adjudicative hold on Form I-765 applications filed by nationals of designated countries, and distinguishing *Khachutorov* as involving routine processing delay).

**C. The Court Does Not Reach Plaintiff Jasmine Dumont's Standing.**

Defendants separately contend that Plaintiff Jasmine Dumont lacks Article III standing because she is not the applicant on either pending form. The Court need not resolve that question. There is no mandatory sequence in which a court must address independent, non-merits threshold grounds. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584– 85 (1999). And the jurisdictional defects identified above dispose of every claim asserted by both Plaintiffs. The Court therefore expresses no view on whether Jasmine Dumont's alleged injuries would otherwise support standing.

## IV.  CONCLUSION

Congress has committed the timing of these adjudications to the Executive Branch, and this Court may not police what Congress has placed beyond its review. Plaintiffs' remedies for the delay they allege lie with the agency and, ultimately, with Congress.

**THE COURT THEREFORE ORDERS** that Defendants' Motion to Dismiss (Doc. 14) is **GRANTED**. Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. Plaintiffs have not requested leave to amend, and leave is in any event denied as futile because the jurisdictional defects are legal in nature and not curable by amendment. *See Brereton*, 434 F.3d at 1219 (inability to cure a jurisdictional defect justifies denial of leave to amend, though the dismissal remains without prejudice). Because Plaintiffs do not prevail, their request for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, is likewise denied. The Clerk is directed to enter judgment accordingly and to close the case.

11

**IT IS SO ORDERED.**

Dated this 30th day of July, 2026, at Topeka, Kansas.

*s/ Anthony W. Mattivi*
Anthony W. Mattivi
United States District Judge